ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
Joey L. Blanch
Assistant United States Attorney
Deputy Chief, Violent and Organized Crime Section
California Bar Number:   186487
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3315
     Facsimile: (213) 894-3713
     E-mail: joey.blanch@usdoj.gov

Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>           v.<br><br>HAROUT HAGOP SARAFIAN,<br>  et al.,<br><br>                 Defendants. | CR No. 09-68A-VAP<br><br>GOVERNMENT'S POST-REMAND <u>SENTENCING POSITION FOR DEFENDANT HAROUT SARAFIAN;</u> <u>DECLARATION OF JOEY L. BLANCH</u><br><br>Hearing Date: July 29, 2013 |

Plaintiff United States of America, through its counsel of record, the United States Attorney's Office for the Central District, hereby submits its position re: re-sentencing of defendant Harout Sarafian, pursuant to Rule 32(b)(6)(B) of the Federal Rules of Criminal Procedure.

This position is based on the attached Memorandum and Declaration of Joey L. Blanch, the Pre-Sentence Report, the government's previously-filed sentencing position, the files and records of this case, and any argument to be presented at the sentencing hearing.

Dated: July 15, 2013        Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

\_\_\_/s/_____
JOEY L. BLANCH
Assistant United States Attorneys

Attorneys for Plaintiff
United States of America

**MEMORANDUM**

### I. INTRODUCTION

As set forth in the government's initial sentencing position, defendant Harout Sarafian ("defendant" or "Sarafian") is mired in sexual exploitation offenses.  He has amassed a huge collection of child pornography, he traveled to Romania for the purpose of having sex with minors, he produced child pornography with teenage boys, and he conspired with a man in Italy to produce child pornography for sale in the United States.  Defendant also participated in Lost Boy, a child pornography message board dedicated to sexual images of young boys, for which he has pleaded guilty to conspiracy to advertise child pornography.  In light of defendant's crime of conviction, as well as his relevant conduct, uncharged conduct, and other 3553(e) factors, the Court sentenced defendant to 20 years.

On appeal, the parties agreed that at the initial sentencing hearing, the government should have informed the Court that it did not possess a particular piece of evidence – specifically, a communication regarding defendant's molestation of a 10-year old boy ("the communication").  See attached Declaration of Joey Blanch.  Because the Court relied on this communication in denying defendant's request for a role adjustment and in determining that a 20-year sentence was appropriate, the parties agreed that defendant should be re-sentenced.

On remand for re-sentencing post-appeal, the government's sentencing position remains essentially unchanged; instead of a 20-year recommendation, the government now recommends a sentence

of 235 months (19 years and 7 months).[1]  In support of this recommendation, the government relies on the previously filed sentencing position, and will not reiterate it here.  Instead, the government addresses only the impact of the absence of the communication on defendant's sentence; specifically, the government addresses why the Court should still deny defendant's request for a downward role adjustment and should now re-sentence him near the high end of the sentencing range dictated by the plea agreement.

## II.  **BACKGROUND**

On December 8, 2008, FBI SA Adrienne Mitchell attended a meeting in Bucharest, Romania, involving child sex tourism in Romania.  At that meeting, law enforcement from Norway and Italy informed the FBI that they had seized a computer from Italian Guido DiGregorio, and on that computer, they found evidence that defendant had engaged in child sex tourism in Romania. Specifically, Italian and Norwegian authorities informed the FBI that the chat logs from DiGregorio's computer show that while on the trip, defendant communicated with DiGregorio and said that he was "getting really crazy" with his friend in Romania. International law enforcement further informed the FBI that the chat logs included discussions of a 10-year-old boy with whom defendant engaged in sexual intercourse while in Romania, including a photograph of the boy, which was sent by defendant to DiGregorio.  None of these communications were provided to the FBI at that time.

---

[1] Pursuant to the plea agreement, defendant's appellate waiver is set at 235 months.

On January 14, 2009, a federal search warrant was executed at defendant's home. Defendant was arrested on charges related to child pornography found during the search. The affidavit in support of the complaint included the information provided to the FBI by international law enforcement at the meeting in Bucharest; namely that defendant and Tracy were "getting really crazy" and that defendant had informed DiGregorio that he had had sex with a 10-year-old boy in Romania.

On December 12, 2010, defendant and others were indicted with crimes relating to their participation in the Lost Boy child pornography message board. On September 12, 2011, defendant pleaded guilty to count two of the second superseding indictment, conspiracy to advertise child pornography in violation of Title 18, United States Code, Section 2251(d), pursuant to a plea agreement.

Pursuant to the plea agreement, the government did not charge defendant with crimes related to his trip to Romania. However, defendant agreed pursuant to the plea agreement that the district court could consider these allegations when determining his sentence. Travel records confirm that defendant and co-defendant Woodrow Tracy ("Tracy") did, in fact, travel to Romania. Further, defendant and Tracy have both admitted that the purpose of their trip to Romania was to have sex with boys. However, both consistently stated that they never actually engaged in sexual activity with boys in Romania.

The PSR was disclosed on December 1, 2011. In reliance on the information in the complaint, the PSR stated that defendant had had sex with a 10-year-old boy in Romania.

In its sentencing papers, the government acknowledged that defendant and Tracy consistently stated that they did not have sex with boys in Romania.  The government also conceded that no images had been found depicting defendant or Tracy engaged in sexual activity with boys in Romania.  However, the government argued that defendant's claim that he did not engage in sex with minors in Romania was not credible.

Among the evidence cited by the government in support of its argument that defendant had sex with minors in Romania was the communication from defendant to DiGregorio that he had had sex with a 10-year old boy in Romania.  As set forth above, international law enforcement informed the FBI about this communication at the Bucharest conference.  After the Bucharest conference, copies of the communications between defendant and DiGregorio were provided by international law enforcement to the FBI.  When the government's sentencing papers were filed, the government mistakenly believed that the communication regarding the 10-year-old boy was among the communications provided to the FBI.  In fact, however, no communication regarding any 10-year-old boy was included in the material provided to the FBI by international law enforcement.  Therefore, the only evidence that such a communication exists comes from the statements made to the FBI by international law enforcement at the Bucharest conference.

In his sentencing position, defendant did not specifically deny the existence of the communication from defendant to DiGregorio, in which defendant claimed to have had sex with a 10-year-old boy in Romania.  However, defendant objected to the PSR's reference to defendant having sex with a 10-year-old boy in

4

Romania, arguing that there was no evidence in support of this claim and that no photographs of defendant engaged in sexual activity with minors in Romania had been found.

On April 11, 2012, the parties appeared for sentencing. The Court overruled defendant's objection to the PSR. In overruling defendant's objections, the Court specifically referred to defendant having sex with a 10-year-old boy in Romania. Because the government continued to mistakenly believe that the communication between defendant and DiGregorio regarding the 10-year-old boy had subsequently been provided by international law enforcement, the government failed to inform the Court that the government did not actually possess this particular communication. Therefore, the only evidence in the record to support the government's argument and the Court's conclusion that defendant had sex with a 10-year-old boy in Romania was the affidavit in support of the complaint, which detailed the statements of international law enforcement to the FBI at the Bucharest conference, and which were not subsequently contained in the documents provided to the FBI. The Court sentenced defendant to 20 years in custody.

Defendant appealed on the ground that the Court should not have overruled his objection to the PSR. While the government does not believe the Court erred in its good faith reliance on the affidavit in support of the complaint and the government's sentencing papers, the government agreed with defendant that prior to sentencing, the government should have informed the Court that the only evidence regarding the communication about defendant having sex with a 10-year-old boy came from statements

by international law enforcement, and that these statements were not supported by the communications that were later provided to the FBI. As the Court inadvertently sentenced defendant based on incomplete information, the parties requested that the appellate court vacate the district court's sentence and remand the case for re-sentencing. The appellate court agreed, and remanded the case for re-sentencing.

### III. ARGUMENT

**A. Defendant Traveled to Romania for the Purpose of Having Sex With Minors**

Defendant's numerous child exploitation offenses were set forth in detail in the government's sentencing position, and will not be repeated here. However, as set forth above, that position stated that while in Romania, defendant sent a communication to DiGregorio, stating that he had molested a 10-year-old boy, without clarifying that this information came exclusively from international law enforcement, and was not in the contents of DiGregorio's computer when that material was subsequently provided to the FBI.

The government agreed with defendant that the case should be remanded for re-sentencing because the Court is entitled to full and accurate information from the government. However, the government's sentencing position is essentially unchanged. Even without the communication regarding the 10-year-old boy, there is overwhelming evidence that the purpose of defendant's trip to Romania was to have sex with minors. Defendant's chats with DiGregorio prior to the trip and during the trip – chats that are in the government's possession and which have been provided to

the Court (see Exhibit B to the government's initial sentencing position) make it explicitly clear that the purpose for the trip was to have sex with children. For instance:

- Defendant told DeGregorio that he only like boys under the age of 16 years old, asked if Romanian boys liked "kissing, sucking, or being sucked," commented that if he were performing oral sex on a Romanian boy he would wash the boy first, asked if the boys would orgasm, inquired whether he should pay the boys by the hour, inquired whether he should pay the boys in Euros or Romanian Lei, and how much he should pay.

- DeGregorio responded to these inquiries, giving recommendations on where to pick up boys, suggesting that the boys would enjoy viewing pornography, that defendant would have to be "very convincing" to get the "cute boys" to trust him, and recommended that he pay a boy "100 Lei" for their first encounter, if the boy was "nice."

- DeGregorio also gave defendant recommendations for finding apartments and warned defendant to be careful about attempting to pick up boys at the beach in case they were there with their families.

- While in Romania, defendant contacted DeGregorio, complaining that he needed a key card for the elevator in his hotel (without which it was difficult to sneak boys into his room), discussing nude boys he had seen at the beach, and discussing further where to find boys and whether DeGregorio's contacts could provide boys for him.

- DeGregorio advised defendant to contact an individual who would charge defendant 100 Lei per boy; the two discussed various boys who were available, including their ages, whether they were "cute" and/or "sexy," and the sort of sex acts that they wanted to engage in with the boys.

- Defendant was frustrated that finding the boys was not easy -- he said "I wanted to have a boy on this vacation, because loving boys is the only thing that keeps me alive" -- and hoped that DeGregorio's contacts could bring the boys directly to defendant at the hotel.

- DeGregorio advised that defendant "go slow with the boys and make sure they have fun."

- At one point, defendant indicated that one of DeGregorio's contacts was actually present, stating

7

"Alex is here."

See Exhibit B to the government's initial sentencing position.

    The government has always candidly admitted that while both Tracy and defendant admitted that the purpose of the trip to Romania was to have sex with minors, they both consistently claimed that they did actually succeed in having sex with minors. With or without the communication regarding the 10-year-old boy, a reasonable inference from the evidence is that defendant did, in fact, have sex with a minor in Romania. More importantly, defendant's trip to Romania indicates a desire to have sex with minors and a willingness to go to great lengths and expense to act on those desires. Whether he was successful in Romania or not, the danger posed by defendant is the same, and the government's sentencing analysis remains unchanged.

**B.**     **Defendant is Not Entitled to a Role Adjustment**

    During the previous sentencing proceedings, defendant argued that he was entitled to mitigating role adjustment. Although defendant admitted that he had posted frequently on Lost Boy, he stated that (1) not all his posts contained child pornography; and (2) he did not use the board to disseminate "home grown" child pornography or to collaborate on creating new images.

    At the initial sentencing hearing, the Court rejected defendant's request, pointing out that defendant posted approximately 450 times. As defendant based his request for a minimal role adjustment on his claim that he had never posted about having sex with minors, the Court also pointed out that defendant had traveled to Romania with one of the other Lost Boy

8

members to have sex with minors, and further planned a similar trip to Mexico with the assistance of other Lost Boy members. Regardless of whether defendant actually succeeded in having sex with minors in Romania, defendant is not entitled to any role adjustment.

The application note to U.S.S.G. § 3B1.2(a) suggests that the "minimal participant" reduction should be applied infrequently, and is generally appropriate only where the defendant had a lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others. Application note to U.S.S.G. § 3B1.2(b) suggests that "minor participant" applies to a defendant described in the note regarding "minimal participant," but whose role could not be described as "minimal." Neither of these descriptions apply to defendant:

- defendant posted on the message board approximately 450 times (PSR ¶ 40);
- many of defendant's posts contained child pornography and encouraged others to post child pornography (PSR ¶ 43);
- defendant traveled to Romania with another Lost Boy member for the purpose of having sex with minors – as set forth above, this is clearly supported by the evidence, regardless of whether he actually had sex with minors there, and regardless of whether he bragged about his success in the missing communication to DiGregorio;
- defendant made plans with another Lost Boy member to travel to Mexico for the purpose of molesting children (see Exhibit C to the government's initial sentencing position);
- defendant did create his own child pornography, and shared it with another Lost Boy member, although he did not post these images on Lost Boy. (PSR ¶¶ 50-52). Note that although Sarafian claims his role is less than other participants who posted "home grown" child

pornography to the board, in fact, none of the members posted images that they themselves produced directly to the board. Rather, like defendant, they shared the images privately with select individuals, often other members of Lost Boy.

In his plea agreement, defendant admitted that he joined Lost Boy, knowing full well that the purposes of the message board was to trade child pornography. Lost Boy was not a hierarchical structure, with varying grades of membership and participation. Rather, every member had access to the entire board, could post messages, comment on images, and access the shared library of child pornography posted on the board, the FTP, and the Rapidshare account. The only exceptions were the two board administrators, the three members admissions committee, and the members invited to participate in the Handbook Project.

Defendant, through his participation in Lost Boy, was actively engaged in the market for child pornography. He was one of Lost Boy's most frequent posters, posting child pornography, seeking child pornography, and commenting on child pornography. Defendant clearly took advantage of the Lost Boy child pornography library, downloading numerous child pornography images from the Board. Between the Lost Boy board, Gigatribe, and other means, defendant amassed a collection of approximately 200,000 images and videos of child pornography. PSR ¶ 49. This does not evidence an individual with a minimal or minor interest in child pornography, or someone who spent a minimal or minor amount of time acting on that interest, and defendant's request for a role adjustment should be denied.

**C.  Government's Sentencing Position**

As set forth in detail in the government's initial

sentencing position, defendant was an avid participant on Lost Boy and other child pornography trading sites; defendant produced and attempted to produce child pornography himself; defendant traveled to Romania for the purpose of having sex with children – regardless of whether he succeeded – and was planning a similar trip to Mexico; defendant suggested to at least one minor that he could introduce him to sex and then pimp him out for sex with older men.  For all these reasons, as well as the other facts set forth in detail in the government's initial sentencing position, the government agreed in the plea agreement to recommend a sentence between 18 ½ years and 20 years in custody.  Given the serious nature and high number of defendant's offenses, the government recommends a sentence of 235 months.  This is five months shorter than the government's initial recommendation, as 235 months is the sentence at which defendant negotiated his appellate waiver.  Consistent with the government's original sentencing position, any period of incarceration should be followed by a lifetime period of supervised release.

### IV. CONCLUSION

The evidence that defendant traveled to Romani for the purpose of having sex with boys is significant, with or without the missing communication.  A sentence of 235 months is appropriate for defendant in light of the overall course of his conduct, and the factors set forth in 18 U.S.C. 3553(a).

|   |   |
|---|---|
| 1 | DECLARATION OF JOEY L. BLANCH |
| 2 | I, Joey L. Blanch, declare as follows: |
| 3 |     1.   I am an Assistant United States Attorney in the United |

1                       DECLARATION OF JOEY L. BLANCH

2 I, Joey L. Blanch, declare as follows:

3     1.   I am an Assistant United States Attorney in the United States Attorney's Office for the Central District of California. I represent the government in this case.

    2.   I have spoken with FBI agent Adrienne Mitchell. She informed me that on December 8, 2008, she attended a meeting in Bucharest, Romania involving child sex tourism in Romania. At that meeting, law enforcement from Norway and Italy informed the FBI that they had seized a computer from Italian Guido DiGregorio, and on that computer, they found evidence that defendant Harout Sarafian ("defendant" or "Sarafian") had engaged in child sex tourism in Romania. Specifically, Italian and Norwegian authorities informed the FBI that the chat logs from DiGregorio's computer show that while on the trip, defendant communicated with DiGregorio and said that he was "getting really crazy" with his friend in Romania. International law enforcement further informed the FBI that the chat logs included discussions of a 10-year-old boy with whom defendant engaged in sexual intercourse while in Romania, including a photograph of the boy, which was sent by defendant to DiGregorio. None of these communications were provided to the FBI at this time.

    3.   On January 14, 2009, a federal search warrant was conducted on defendant's home. Defendant was arrested on charges related to child pornography found during the search. The affidavit in support of the complaint included the information provided to the FBI by international law enforcement at the meeting in Bucharest, that defendant had informed DiGregorio that

he had had sex with a 10-year-old boy in Romania.

4. On December 12, 2010, defendant and others were indicted with crimes relating to their participation in the Lost Boy child pornography message board. On September 12, 2011, defendant pleaded guilty to count two of the second superseding indictment, conspiracy to advertise child pornography in violation of Title 18, United States Code, Section 2251(d), pursuant to a plea agreement.

5. Pursuant to the plea agreement, the government did not charge defendant with crimes related to his trip to Romania. However, defendant agreed pursuant to the plea agreement that the district court could consider these allegations when determining his sentence. Travel records confirm that defendant and co-defendant Woodrow Tracy did, in fact, travel to Romania. Further, defendant and Tracy have both admitted that the purpose of their trip to Romania was to have sex with boys. However, both consistently stated that they never actually engaged in sexual activity with boys in Romania.

6. The PSR was disclosed on December 1, 2011. In reliance on the information in the complaint, the PSR stated that defendant had had sex with a 10-year-old boy in Romania.

7. In its sentencing papers, the government acknowledged that defendant and Tracy consistently stated that they did not have sex with boys in Romania. The government also conceded that no images had been found depicting defendant or Tracy engaged in sexual activity with boys in Romania. However, the government argued that defendant's claim that he did not engage in sex with minors in Romania was not credible.

8. Among the evidence cited by the government in support of its argument that defendant had sex with minors in Romania was the communication from defendant to DiGregorio that he had had sex with a 10-year old boy in Romania. As set forth above, international law enforcement informed the FBI about this communication at the Bucharest conference. After the Bucharest conference, copies of the communications between defendant and DiGregorio were provided by international law enforcement to the FBI. When I filed the government's sentencing papers, I mistakenly believed that the communication regarding the 10-year-old boy was among the communications provided to the FBI. In fact, however, no communication regarding any 10-year-old boy was included in the material provided to the FBI by international law enforcement. Therefore, the only evidence that such a communication exists comes from the statements made to the FBI by international law enforcement at the Bucharest conference.

9. In his sentencing position, defendant did not specifically deny the existence of the communication from defendant to DiGregorio, in which defendant claimed to have had sex with a 10-year-old boy in Romania. However, defendant objected to the PSR's reference to defendant having sex with a 10-year-old boy in Romania, arguing that there was no evidence in support of this claim and that no photographs of defendant engaged in sexual activity with minors in Romania had been found.

10. On April 11, 2012, the parties appeared for sentencing. I was present, representing the government. The Court overruled defendant's objection to the PSR. The Court did not simply conclude that defendant had had sex with a minor in Romania

7

(which could reasonably have been inferred from the evidence). Rather, on two occasions during the sentencing hearing, the district court specifically referred to defendant having sex with a 10-year-old boy in Romania. I believe that the Court made these statements in good faith reliance on the government's sentencing position. However, because I continued to mistakenly believe that the communication between defendant and DiGregorio regarding the 10-year-old boy had subsequently been provided by international law enforcement, I did not inform the Court that it did not actually have this particular communication. Therefore, the only evidence in the record to support the government's argument and the court's conclusion that defendant had sex with a 10-year-old boy in Romania (as opposed to the more general conclusion that defendant traveled to Romania with the intent of having sex with a minor or the conclusion that defendant likely had sex with a minor in Romania) was the affidavit in support of the complaint, which detailed the statements of international law enforcement at the Bucharest conference, and which were not subsequently contained in the communications provided to the FBI. The Court sentenced defendant to 20 years in custody.

    11.  Defendant subsequently appealed on the ground that the Court should not have overruled his objection to the PSR. While the government does not believe the Court erred in its good faith reliance on the affidavit in support of the complaint and the government's sentencing papers, the government agreed with defendant that prior to sentencing, the Court should have been informed that the only evidence regarding the communication about defendant having sex with a 10-year-old boy came from statements

by international law enforcement, and that these statements were not contained in the communications that were later provided to the FBI. As the Court inadvertently sentenced defendant based on incomplete information, the government requested that the Court of Appeals vacate the Court's sentence and remand the case for re-sentencing.

   I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 15, 2013

                          /s/
                          JOEY L. BLANCH